ORIGINAL





# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JOSÉ SANDOVAL,<br><br>    Debtor,<br>───────────────────────<br>COMCAST OF LOS ANGELES, INC.,<br><br>    Plaintiff,<br>vs.<br>JOSÉ SANDOVAL,<br><br>    Defendant. | Case No. LA 05-24453-SB<br><br>Adv. No. LA-05-02196-SB<br><br>CHAPTER 7<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL<br><br>DATE: December 8, 2005<br>TIME: 10:00 a.m.<br>CRTRM.:1575 (Roybal) |

## I. INTRODUCTION

Creditor Comcast of Los Angeles, Inc. ("Comcast") seeks a determination that its claim for statutory damages resulting from Debtor Jose Sandoval's alleged violations of anti-piracy and anti-signal theft laws under California Penal Code § 593d is a nondischargeable debt under § 523.[1] Sandoval, a subscriber to Comcast's basic cable service, was found with two cable converter boxes connected to his television sets, neither provided by Comcast, with hardwire alterations permitting him to decode all of Comcast's premium and Pay per View cable transmissions.

Following trial, the court finds that Comcast has not provided sufficient evidence to show a violation of the statute. The court further finds that Comcast has not presented sufficient evidence to establish a prima facie case that its claim for statutory damages is nondischargeable. Consequently, any debt owing to Comcast by reason of the cable boxes is discharged.

## II. RELEVANT FACTS

There are two sets of facts relevant to this case – the facts presented at trial, and background facts about the operations of the cable television industry.

### A. Facts of This Case

Comcast distributes television broadcast signals through a cable television system in parts of Los Angeles County, California. Comcast offers several different levels of cable service to its customers, including a "basic" level service or "standard" package and premium and Pay per View services. Sandoval had a subscription for the "basic" level of service from Comcast, Sandoval's cable television provider.

At trial, the only probative evidence presented by Comcast was a Security Field Observation Report ("field report") and a Converter Discrepancy Report ("discrepancy report"), which were admitted into evidence as records of regularly conducted activity.[2]

---

[1] Unless otherwise specified, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (West 2005) and all rule references are to the Federal Rules of Bankruptcy Procedure.
[2] *See* FED. R. EVID. 803(6).

Comcast performed an inspection of the cable wires and equipment at Sandoval's residence, with his consent, on August 12, 2003. There Comcast found two grey Zenith cable television transmission converter boxes without serial numbers, one connected to a television set in Sandoval's living room, and the other connected to a television set in the back bedroom. The field report indicates that both converters were "clearly receiving all premium and pay per view channels. They were receiving (SHO-27) Real Men, (iN1-75) Just Married."

Sandoval voluntarily surrendered the converters to Comcast. Comcast's later office inspection revealed that both converters had "hardwire modifications."

### B. The Cable Television Industry

Comcast presented no evidence on the nature or the technology of the cable television industry. Some information is available from other recently reported cases.

Cable television signals are transmitted through cable wiring from a cable television system provider's transmission center to its customer's television sets. Cable services offered include basic cable programming, premium programming (including movie channels such as HBO) and "Pay per View" programs. Cable television system providers encode or "scramble" the signals of the channels except for those in the basic service package. Basic service is provided at a monthly fee, premium services are provided for additional monthly fees, and Pay per View programming is sold by event. *See generally, CSC Holdings, Inc. v. Alberto*, 379 F. Supp. 2d 490, 491 (S.D.N.Y. 2005).

For each customer, a cable television provider installs a converter to unscramble the coded signals if the customer purchases service above the basic level. A service provider also attaches a filter to the cable lines to prevent a decoding device from descrambling any scrambled programs. Customers with unfiltered service levels may obtain "pirate" decoding devices to unscramble the scrambled signals, and thus to obtain higher levels of service without paying the additional fees. *See id.*

## III. ANALYSIS

Comcast argues that Sandoval knowingly and willfully possessed, attached to its satellite television system, and used two unauthorized and illegally modified cable television decoder boxes to

2

view Comcast's scrambled premium and Pay per View programming without authorization or proper payment. By doing so, Comcast claims that Sandoval committed six separate violations of California Penal Code § 593d and that it is entitled to monetary damages in the amount of $30,000 under § 593d(f)(1).

Comcast further argues that the debt is based on actual fraud, larceny, and conversion, and thus is nondischargeable under §§ 523(a)(2)(A), (4), and (6), respectively. The court held a trial for Comcast to make a prima facie case that the debt is owing and that it is nondischargeable.

### A. VALIDITY AND AMOUNT OF THE CLAIM: CALIFORNIA PENAL CODE § 593d

We first examine whether, and to what extent, Comcast has a claim under applicable state law. A "claim" is defined in § 101(5) to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

Non-bankruptcy law determines the validity of a creditor's claim. See, e.g., Grogan v. Garner, 498 U.S. 279, 283-84 (1991); Cossu v. Jefferson Pilot Sec. Corp. (In re Cossu), 410 F.3d 591, 595 (9th Cir. 2005). To the extent that Comcast fails to prove a debt, there is no issue of nondischargeability.

California Penal Code § 593d(a) provides the state law rule governing possession and use of unauthorized and unlawfully modified cable television signal decoders.[3] Section 593d(a) states, in relevant part:

> [A]ny person who, for the purpose of intercepting, receiving, or using any program or other service carried by a multichannel video or information services provider that the person is not authorized by that provider to receive or use, commits any of the following acts is guilty of a public offense:
>
> (1) Knowingly and willfully makes or maintains an unauthorized connection or connections, whether physically, electrically, electronically, or inductively, to any cable, wire, or other component of a multichannel video or information services provider's system or to a cable, wire or other media, or receiver that is attached to a multichannel video or information services provider's system.
>
> (2) Knowingly and willfully purchases, possesses, attaches, causes to be attached, assists others in attaching, or maintains the attachment of any unauthorized device or devices to any cable, wire, or other component of a multichannel video or information services provider's system or to a cable, wire or other media, or receiver that is attached to a multichannel video or information services provider's system.
>
> (3) Knowingly and willfully makes or maintains any modification or alteration to any device installed with the authorization of a multichannel video or information services provider.
>
> (4) Knowingly and willfully makes or maintains any modifications or alterations to an access device that authorizes services or knowingly and willfully obtains an unauthorized access device and uses the modified, altered, or unauthorized access device to obtain services from a multichannel video or information services provider.
>
> For purposes of this section, each purchase, possession, connection, attachment, or modification shall constitute a separate violation of this section.

Section 593d(f) provides a civil remedy of $5,000 or triple damages, whichever is greater, plus

---

[3]There is also a federal statute imposing both criminal and civil liability for the unauthorized reception of cable service. See 47 U.S.C. § 553 (2006). This statute is not before the court because Comcast does not bring any claim thereunder.

3

reasonable attorney fees, against "[a]ny person who violates this section." Comcast does not contend that it suffered any actual damages as a result of the violations.

There are four elements to a cause of action under § 593d: (1) offending conduct, (2) performed "knowingly and willfully," (3) done for a specified unlawful purpose, (4) that caused damage to the claimant.

### 1. Offending Conduct

Comcast contends that Sandoval engaged in three kinds of offending conduct for each of the two cable boxes, which resulted in six violations of § 593d. We now turn to an examination of the evidence supporting each of these charges.

#### a. Unauthorized Connection

Section 593d(a)(1) prohibits unauthorized connections to a cable provider's system. This section is designed to prohibit the stealing of a cable television signal by a person who is not a customer of the provider.

There is no evidence that Sandoval made any unauthorized connection to Comcast's cable system, within the meaning of § 593d(a)(1). Comcast admits that it authorized Sandoval's connection to its cable system to receive programming from Comcast. Thus, Comcast authorized the connection of both television sets to the decoders. In consequence, the evidence does not support any claim for unauthorized connection to Comcast's cable system.

#### b. Possession of Unauthorized Decoding Devices

Section 593d(a)(2) makes it a violation to possess any "unauthorized device" that is attached to a cable provider's system. This provision is designed to prohibit a legitimate cable service customer from attaching any such device to the customer's receiver system or to the cable system. This statutory provision also applies to anyone who purchases or attaches such a device for someone else.

While Sandoval possessed the Zenith converter boxes, there is no evidence before the court that they were unauthorized. The field report states only that these converters were "not issued to the account" and that they "had hardwire modifications." There is no evidence in the record as to what equipment or devices Comcast has authorized, either in general or for Sandoval in particular. Furthermore, there is no evidence whether such a Zenith converter box (in either the modified or unmodified version) is on the list of authorized devices.

The court is left totally uninformed as to what boxes were authorized by Comcast in this case, and whether the decoders found at Sandoval's residence were or were not authorized. The court finds that Comcast has not shown that Sandoval possessed an unauthorized decoder device.

#### c. Modification of Equipment Installed by Service Provider

Section 593d(a)(3) prohibits making or maintaining any modification or alteration of any device installed with the authorization of a service provider. This provision is designed to cover a consumer's modification of equipment provided or authorized by the service provider.

The court's best guess is that this provision does not apply to Sandoval, because he did not have a modified or altered converter provided by Comcast. Because Comcast has failed to show what equipment or devices it authorized Sandoval to use, the court cannot find that either of the Zenith decoders was a "device installed with the authorization" of Comcast.

Furthermore, the evidence admitted is insufficient to determine whether the converters here at issue were modified or altered in any sense relevant to § 593d(a)(3). To be relevant, the modification must be made for an improper purpose, as discussed *infra*. The field observation report only states that, "they had hardwire modifications." However, this is a mere conclusion. The report fails to specify any respect in which the converters were improperly modified, or the purpose of the modifications.

In consequence, the court cannot determine whether the "modifications" were in fact different from the state in which the converters should have been, or whether the "modifications" violated any rights of Comcast. Thus, the court finds insufficient evidence to determine that there was any relevant modification for the purposes of § 593d(a)(3).

The report also states that the Zenith converters were "clearly receiving all premium and pay per view channels." However, Comcast fails to explain (at all) what was improper about such reception.

The court assumes (with no evidentiary support) that Comcast sends the same package of

4

programming to every customer, and that it controls the level of service provided to a particular customer through the converter box that it installs at the customer's home. *See, e.g., CSC Holdings, Inc. v. Kelly*, 374 F. Supp. 2d 303, 303 (E.D.N.Y. 2005) (describing role of converter in descrambling signal and regulating type of service provided to a customer). If this were not so, an altered converter would provide no benefit to a customer. In consequence, every converter installed for every customer receives all of the signals, whether covered by the customer's contract or not. It would thus be altogether proper for Sandoval's converters to receive all of Comcast's channels.

### d. Use of Unauthorized of Modified Devices

Use of each of the Zenith converters may in fact constitute a violation under § 593d(a)(4). However, Comcast makes no contention that Sandoval committed a violation of § 593d(a)(4). Furthermore, Comcast has presented no evidence that Sandoval actually used either of the cable boxes.

### 2. "Knowingly & Willfully"

California case law gives us guidance in interpreting the meaning of "knowingly and willifully" in each subparagraph of § 593d. A violation of this statute is a "general intent offense." *See People v. Prevost*, 71 Cal. Rptr. 2d 487, 492 (Cal. App. 1998). This requires only that the defendant knowingly and willfully engage in the conduct, not that he have a specific intent to engage in theft of cable services. *Id.*

Comcast altogether omits any reference to the "knowingly and willfully" requirement. The record is altogether lacking in any evidence that Sandoval "knowingly and willfully" engaged in improper conduct. There are only two items of possibly relevant evidence. First, Sandoval signed the voluntary surrender form and surrendered the Zenith converters to agents for plaintiff when they visited his residence. The debtor surrendered the units immediately after agents of the plaintiff "informed Jose that he was in violation of state and federal laws and was given copies of such laws as well as the public notice." Because the surrender of the converter was made immediately after the delivery to the debtor of these unsubstantiated allegations, the court can draw no inference adverse to the debtor from his voluntary surrender of the converters.

The second item of evidence is that an agent of Comcast asked Sandoval where he obtained the "illegal" converters, and he stated, "I bought them from some guy a while ago." The evidence before the court does not disclose exactly what question Comcast agent posed to the debtor. The testimony of the inquiring agent could have been helpful on this issue, but he did not testify. The court treats Sandoval's response as noncommittal with respect to any improper action.

The voluntary surrender form is likewise unavailing to Comcast. Apart from the "voluntary surrender" title of the document, it contains no language that the court can conclude the debtor adopted in signing the document.

The court concludes that there is no credible evidence of any admission on the debtor's part of any conduct that was a knowing and willful violation of the statute.

### 3. Unlawful Purpose

Section 593d specifies that the offending activity must be conducted "for the purpose of intercepting, receiving, or using any program or other service . . . that the person is not authorized by that provider to receive or use . . . ." Comcast argues in its trial brief that the boxes in this case were intentionally modified for the sole purpose of perpetrating cable signal theft. However, the trial record in this case is altogether lacking in any evidence of the debtor's purpose in possessing the altered cable boxes.

Comcast may have had no evidence as to the debtor's specific purpose in possessing these cable boxes. Nonetheless, Comcast could have presented evidence that such alterations are almost always made for this purpose, and perhaps even that there is no other known purpose for such alterations. *See, e.g., CSC Holdings v. Kelly*, 374 F. Supp. 2d 303, 305-06 (E.D.N.Y. 2005) (plaintiff submitted affidavits showing that the "J Cube" device had only one purpose, to intercept cable television programming services); *CSC Holdings, Inc. v. Alberto*, 379 F. Supp. 2d 490, 492 (S.D.N.Y. 2005) (same). But there is no such evidence in the trial record in this case.

### 4. Damage

To prove a debt arising under § 593d, Comcast must show that it was in fact damaged by the debtor's conduct. Comcast makes no claim for actual damages in any amount. It relies, instead, entirely on its claim for statutory damages.

Comcast argues that Sandoval has committed at least six violations of § 593d, consisting of the possession, connection, and use

of each of the two allegedly unauthorized converters taken from his residence. Comcast argues that, because § 593d(f)(1) provides for damages of $5,000 per violation, it is entitled to statutory damages of at least $30,000.

However, § 593d(f) does not provide for $5,000 in statutory damages for each violation. It only provides a single $5,000 liability for "[a]ny person who violates this section . . . . " *Accord, Continental Cablevision, Inc. v. Poll*, 124 F.3d 1044, 1049 (9th Cir. 1997) (giving similar interpretation to federal statute providing for statutory damages).

Furthermore, we are constrained in the § 523 context by the rule that the exception to dischargeability is construed strongly in favor of the debtor and against the creditor. *See, e.g., Su v. Carrillo (In re Su)*, 259 B.R. 909, 912 (B.A.P. 9th Cir. 2001), aff'd 290 F.3d 1140 (9th Cir. 2002); *Riso v. Snoke (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992); *Mandalay Resort Group v. Miller (In re Miller)*, 310 B.R. 185, 193 (Bankr. C.D. Cal. 2004). Comcast has only claimed that one person, Mr. Sandoval, violated the statute.

The court finds that, for the purposes of § 523, § 593d(f) imposes only $5,000 in statutory damages on such a person, and does not impose separate damage awards for each violation. Accordingly, the court concludes that Sandoval would owe only $5,000 in statutory damages at most, if Comcast had proven its § 593d claim.

### B. DISCHARGEABILITY

Even if Comcast had a $5000 statutory claim against Sandoval, we could not find that the claim is nondischargeable.

Comcast contends that the debt here at issue is nondischargeable under §§ 523(a)(2), (4) and (6). Any exceptions to the discharge under these provisions must be construed narrowly in favor of the debtor. *See, e.g., Su*, 259 B.R. at 912, aff'd 290 F.3d 1140 (9th Cir. 2002); *Riso*, 978 F.2d at 1154; *Miller*, 310 B.R. at 193. The nondischargeable debts listed in § 523 are not automatically excluded from the discharge. A creditor must file an adversary proceeding under strict time limits. *See* § 523(c)(1); Rule 4007.

A court may require a creditor to present admissible evidence to make a prima facie case that a debt qualifies for exclusion from the discharge. *See, e.g., Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086-87 (9th Cir. 1996); *Lu v. Liu (In re Liu)*, 282 B.R. 904, 907-08 (Bankr. C.D. Cal. 2002). The court set a trial for this purpose, where it took testimony and admitted documents. Sandoval did not appear at the trial. The court now considers whether Comcast has made its prima facie case under any of these exceptions to discharge.

### 1. The § 523(a)(2)(A) Claim - Fraud

Section 523(a)(2)(A) provides, in relevant part, that a debt for money, property, or services is nondischargeable to the extent that it is obtained by "false pretenses, a false representation, or actual fraud[4], other than a statement respecting the debtor's or an insider's financial condition." Under Ninth Circuit law, a creditor seeking to establish the nondischargeability of a debt resulting from actual fraud under § 523(a)(2)(A) must establish:

(1) a misrepresentation of fact by the debtor,
(2) that the debtor knew at the time to be false,
(3) that the debtor made with the intention of deceiving the creditor,
(4) upon which the creditor relied, and
(5) that was the proximate cause of damage to the creditor.

*See, e.g., Field v. Mans*, 516 U.S. 59 (1995); *Cossu*, 410 F.3d at 596; *Eashai*, 87 F.3d at 1086; *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991). In *Field*, the U.S. Supreme Court added that any reliance must be justifiable. *See Field*, 516 U.S. at 73-75. Each of these elements must be proved (by a preponderance of the evidence) in order for a creditor to prevail on a claim of nondischargeability based on actual fraud.

Underlying each of these elements is the requirement of a representation, oral or written, made by the debtor. At trial, Comcast presented no evidence whatsoever of any oral or written representations made by Sandoval relevant to this litigation. The only evidence offered was the information contained in the field report and discrepancy report. The discovery of the unauthorized converters connected to the televisions in Sandoval's home by itself does not constitute a "representation" made by the debtor. Because Comcast failed to prove that Sandoval

---

[4] Under Ninth Circuit law, there is no separate nondischargeability cause of action for false pretenses or a false representation. To prevail under § 523(a)(2)(A), the creditor must prove actual fraud. *See, e.g., Miller*, 310 B.R. at 200-02.

6

made any representation, true or false, Comcast failed to make a prima facie case for actual fraud under § 523(a)(2)(A).

Even if Comcast had successfully established that Sandoval had made a misrepresentation, Comcast has not proven the remaining elements of actual fraud under § 523(a)(2)(A). In support of its contention that the debt owing by Sandoval is based on fraud, Comcast cites to *Electric Power board of Chattanooga v. Holt (In re Holt)*, 24 B.R. 215 (Bankr. E.D. Tenn. 1981), a case involving theft of electrical service. In *Holt*, the bankruptcy court found that the debtor was guilty of actual fraud and that the debt arising from charges for electrical services furnished to debtor's residence was thus nondischargeable. The court noted that the evidence indicated "a pattern of conduct by the occupants of the residence in question to use utility services from the Electric Power Board and the Chattanooga Gas Company without paying for them" and that the debtor "received the electrical service knowing that it was stolen." *Id.* at 215-216.

In this case, the evidence presented by Comcast does not indicate who occupied the residence, any such pattern or conduct of theft, or any knowledge on Sandoval's part that the decoders were allowing him to receive programming which he knew to be stolen. Comcast has failed to establish each of the elements required under § 523(a)(2)(A), and thus cannot prevail on its claim of nondischargeability based on actual fraud.

### 2. The § 523(a)(4) Claim - Embezzlement or Larceny

Section 523(a)(4) excepts from an individual debtor's discharge debts arising from embezzlement or larceny.[5] For purposes of § 523(a)(4), federal law (as opposed to state law) governs the definition of embezzlement. *First Del. Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576-77 (B.A.P. 9th Cir. 1997). In the Ninth Circuit, the elements of a claim based on embezzlement are:

(1)   property owned by another is rightfully in the possession of the debtor;
(2)   debtor's appropriation of such property to a use other than the use for which the property was entrusted to debtor; and
(3)   circumstances indicating fraud.

*Transamerica Commercial Fin. Corp. v. Littleton (In re Littleton)*, 942 F.2d 551, 555 (9th Cir. 1991); *Wada*, 210 B.R. at 576. The elements of a claim based on larceny differ from the elements of embezzlement only in that the larcenous debtor takes possession of the property unlawfully. 4 COLLIER ON BANKRUPTCY § 523.10[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005).

Comcast argues that the debt qualifies for the larceny exception to discharge under § 523(a)(4) because Sandoval unlawfully, larcenously, and fraudulently intercepted, decoded and viewed its scrambled premium and Pay per View cable television transmissions. Comcast does not contest that Sandoval properly received Comcast's signals as a subscriber to its basic programming package.

Comcast has offered no direct evidence that Sandoval viewed any programs for which he had not paid (or even that he viewed any programs at all). Comcast asks the court to infer, from his possession of equipment capable of decoding the premium programs, that in fact he used the equipment for this purpose. Comcast could have installed software to monitor use of the cable box to obtain this information, but it did not. Comcast could have installed a filter to prevent Sandoval from receiving transmissions of the premium services, but it did not. Given the obligation to construe the relevant discharge exceptions strongly in Sandoval's favor, the court declines to infer that Sandoval watched programs for which he did not pay.

Indeed, the court cannot even infer that Sandoval used the converters here at issue. The record lacks any evidence whatever of who or how many people inhabited the residence, or which (if any) of them watched television programs. Given the rule requiring strict application of the nondischargeability provisions, the court declines to make any such inference.

Furthermore, the evidence admitted at trial is entirely devoid of information regarding the channels that are included in the various programming packages. The field report merely states that the Zenith converters "were both clearly receiving all premium and pay per view channels. They were receiving (SHO-27) Real Men, (iN1-75) Just Married." Comcast presents no evidence that those channels or programs were included only in its premium and Pay per View packages, and were

---

[5] Not relevant in this case, § 523(a)(4) also excepts from discharge a debt resulting from fraud or defalcation by a fiduciary.

7

not included in Sandoval's subscription to Comcast's basic package. Without knowing which channels and programs are included in the various packages, the court cannot determine that Sandoval unlawfully received cable transmissions to which he was not entitled. Because Comcast has failed to prove unlawful appropriation of its cable signals, Comcast has not established the prima facie elements of larceny or embezzlement.

This is not to say that no debt for the theft of cable services is dischargeable notwithstanding § 523(a)(4). Indeed, the court assumes that a properly proven theft of cable services charge would qualify under § 523(a)(4), at least as to the actual damages shown. If Comcast had successfully established the offensive conduct element of a cause of action under § 593d, that may have been sufficient to show that he unlawfully received programing for which he had not paid, this would constitute larceny, and that the resulting damages would be nondischargeable. Because Comcast has not proven a debt owing under the law against the theft of cable signals, it cannot prevail under § 523(a)(4).

### 3. The § 523(a)(6) Claim - Willful and Malicious Injury

Comcast further claims that the debt owed is based on conversion, and thus is nondischargeable under § 523(a)(6). Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." Conversion is covered by this statutory language. See Del Bino v. Bailey (In re Bailey), 197 F.3d 997, 1000 (9th Cir. 1999); Littleton, 942 F.2d at 554.

Although bankruptcy law determines the dischargeability of debts, courts look to state law to determine whether a conversion has in fact occurred. Jercich v. Petralia (In re Jercich), 238 F.3d 1202, 1206 (9th Cir. 2001); Bailey, 197 F.3d at 1000. Under California law, "a conversion is not per se a willful and malicious injury to the property of another." Peklar v. Ikerd (In re Peklar), 260 F.3d 1035, 1037 (9th Cir. 2001); see id. at 1039 ("[a] judgment for conversion under California substantive law decides only that the defendant has engaged in the 'wrongful exercise of dominion' over the personal property of the plaintiff. It does not necessarily decide that the defendant has caused 'willful and malicious injury' within the meaning of § 523(a)(6)"). Consequently, to prevail on its claim of nondischargeability, Comcast must first establish that a conversion has occurred under California law, and second that the conversion is willful and malicious.

#### a. Conversion under California Law

Under California law, conversion is defined as "the wrongful exercise of dominion over the personal property of another." Id. at 1037; Taylor v. Forte Hotels Int'l, 235 Cal. App. 3d 1119, 1124 (1991). More specifically, conversion includes:

> any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use.

Bailey, 197 F.3d at 1000; Igauye v. Howard, 249 P.2d 558, 561 (Cal. Ct. App. 1952); see Farmers Ins. Exch. v. Zerin, 61 Cal. Rptr. 2d 707, 709 (1997) ("the elements of a conversion are the creditor's ownership or right to possession of the property at the time of the conversion; the debtor's conversion by a wrongful act or disposition of property rights; and damages.").

Comcast presented no evidence at trial to show that Sandoval in fact converted its cable transmissions. The field report indicates that Sandoval was entitled to receive Comcast's signals as a subscriber to its basic programming package. There is no evidence regarding which channels were included in the programming packages for which Sandoval had paid. Consequently, the court cannot determine which channels Sandoval was entitled to receive or that Sandoval wrongfully asserted dominion over Comcast's signal transmissions by possessing descramblers which allowed him to view premium and Pay per View programming. Comcast has not sufficiently established that Sandoval's treatment of its signals constituted conversion as defined under California law.

#### b. "Willful and Malicious"

Once it is established that a conversion did in fact occur, a determination of nondischargeability under § 523(a)(6) requires that

8

Comcast prove that the conversion was both willful and malicious.

Under § 523(a)(6), the willfulness element requires that the debtor intended the consequences of his action, and not just the action itself. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998); *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 427 (B.A.P. 9th Cir. 2002). An injury is willful when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to result from his conduct. *See Su*, 290 F.3d at 1142-46.

The injury inflicted by the debtor must also be "malicious," which requires that the debtor intentionally perform a wrongful act which necessarily causes injury and which is done without cause or excuse. *Id.* at 1146-47. Although malice may be inferred from the act, it must first be established that the conversion was a "willful" injury. *Littleton*, 942 F.2d at 554; *Thiara*, 285 B.R. at 434. Under Ninth Circuit law, willfulness and malice are two distinct elements that must not be conflated. *See Su*, 290 F.3d at 1146.

Based on the minimal evidence presented at trial, Comcast has failed establish that Sandoval's treatment of its signals constituted conversion as it is defined under California law. In the Ninth Circuit, "a failure to prove conversion is fatal to an argument that defendant's conduct caused 'willful and malicious injury.'" *Peklar*, 260 F.3d at 1038. Because Comcast has not sufficiently proved that it suffered injury due to any conversion by Sandoval, Comcast cannot satisfy the willful and malicious prongs of the test for nondischargeability under § 523(a)(6). The evidence does not support a finding of such willful and malicious injury.

Furthermore, even if Comcast successfully established that a conversion of its cable transmissions did in fact occur, it is not clear whether an award of statutory damages under California Penal Code § 593d supports a claim for willful and malicious injury. Although Comcast cites to *CSC Holdings, Inc. v. Feiner (In re Feiner)*, 254 B.R. 266 (Bankr. D. Kan. 2000), as a case exactly on point dealing with the discharge exception for willful and malicious injury and statutory damages arising from cable piracy and use of a cable television descrambler, the damages at issue in that case were awarded pursuant to a *federal* anti-cable signal theft law. In a prior proceeding, a district court had found that the debtor had violated § 553(1) of the Communications Act, which states:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C § 553(1) (2006). Based on the testimony and evidence presented, the district court found that Feiner intercepted or received pay per view service over CSC's cable system, without authorization, and without paying for the service. *Feiner*, 254 B.R. at 270. The bankruptcy court gave preclusive effect to the district court's findings and noted that

> [t]he issues of Feiner's use of the descrambler without justification or excuse, with intent to receive service without paying for it, and with knowledge that he had no authorization from CSC and was thus stealing from CSC, are all issues that were actually and necessarily litigated in the District Court action.

*Id.* at 271. Thus, the bankruptcy court declined to relitigate the issues of Feiner's intent, knowledge, and unauthorized use of the descrambler, and found the debt owing to CSC was nondischargeable under § 523(a)(6). *Id.* at 271, 273. Rather than finding that all violations of § 553(1) of the Communications Act constitute willful and malicious injury, the bankruptcy court relied on the district court's factual findings in determining the nondischargeability of the debt. This court, unlike the bankruptcy court in *Feiner*, does not have the benefit of such findings of fact and has not been presented with any evidence whatsoever sufficient to support a finding of nondischargeability for willful or malicious injury for all violations of § 593d or specifically with respect to Sandoval's alleged conduct.

Although § 593d allows for concurrent criminal and civil remedies, no existing case law establishes that violations of this state anti-piracy and anti-signal theft law constitute willful and malicious injury under § 523(a)(6). On its face, § 593d(a) describes acts performed "knowingly and willfully," in violation of the statute. See § 593d(a)(1)-(4). Comcast has failed to establish whether this language meets the willfulness requirement of § 523(a)(6), that the debtor intended the consequences of his action, and not just the action itself. See *Geiger*, 523 U.S. at 61; *Thiara*, 285 B.R. at 427.

Comcast has also failed to address whether statutory damages awarded under § 593d(f) meet the "malicious" requirement, a distinct element that must be satisfied for a debt to be determined nondischargeable under § 523(a)(6). See *Su*, 290 F.3d at 1146. The court concludes that Comcast has not shown that any statutory damages owing by Sandoval is a nondischargeable debt under § 523(a)(6).

Entirely apart from the California statute, Comcast could present evidence that Sandoval's conduct was willful and malicious. However, Comcast has failed to present any such evidence. In particular, Comcast's total failure to present any evidence of damages apart from statutory damages requires it to rely on the statutory violation for its damage claim. However, Comcast has failed to show that its statutory damages result from willful and malicious conduct on Sandoval's part.

## IV. CONCLUSION

Comcast has not established that it is owed any statutory damages resulting from Sandoval's alleged violations of anti-signal theft laws under California Penal Code § 593d. Even if Comcast had proven such damages, it has failed to show that such damages qualify for exception to discharge under § 523(a)(2)(A), (4), or (6). The court concludes that Comcast is not entitled to a judgment in its favor, and that the adversary proceeding must be dismissed.

DATED: March 31, 2006

_____
Samuel L. Bufford
United States Bankruptcy Judge

## CERTIFICATE OF MAILING

I certify that a true copy of this **FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL** was mailed on ___MAR 3 1 2006___ to the parties listed below:

U.S. Trustee's Office
725 So. Figueroa St., Suite 2600
Los Angeles, CA 90017

Anthony E. Bell, Esq.
700 S. Flower St., Suite 1100
Los Angeles, CA 90017-4113

Jose Sandoval
1029 ½ Osage Ave Apt 7
Inglewood, CA 90301

DATED: __MAR 3 1 2006__

_____
DEPUTY CLERK